Hi, yes, I'm Peter Koznetz. I'm actually appearing for the appellant United States of America. May it please the court, I'd like to reserve a couple of minutes for rebuttal. This case involves a defendant who rearmed with rifles, handguns, and a shotgun less than 48 hours after an Arizona court issued a domestic violence order of protection against him. Twice refused his request to get his firearms back and told him in no uncertain terms that federal law prohibited his possession of any firearms. This was not his first time going down this road. He had previously been found in possession of another firearm, well under another domestic violence order of protection. And on learning these facts, Special Agent Allison Gonzalez prepared a detailed affidavit seeking authorization to search his residence and vehicle for evidence of his violation of the prohibited possessor statute. A United States magistrate judge, based on that affidavit, found probable cause to support the search. And Agent Gonzalez and her team executed the search and found nine firearms in multiple bins and magazines of ammunition. And so the question is, because I just want your limited time here, the question is whether the warrant was overbrought in light of what was presented. Because the warrant and the attachment B, or the items searched for, listed a variety of items that were searched for or that were to be searched for. And do you, when you say, when you're talking about all of this, are you saying all of these facts that you're going over supported everything that was on attachment B? What we are really focused on, Your Honor, is the firearms clause. That is the focus of the motion. Acknowledge there were problems with the warrant here in terms of how overbrought it was. I know we're going to get to the firearms, but was there any basis to search for his vehicle registration records for the ledgers? And I guess they ultimately took his computer and his iPad. Right. So those issues were, those issues were not litigated in the district court, really, except with respect to the computers and the iPad. As to that, the government came forward right at the beginning of the oral argument on suppression and said those items were erroneously seized. We're not going to use them and effectively embrace the suppression remedy. Why were they erroneously seized? I, standing here, I don't know the answer to that, but clearly the government acknowledged that and those aside. So, and when you look at the sufficiency of a warrant, you can sever other parts that the court deems to be. I think you just relied right now on the detailed affidavit that Agent Gonzalez presented. I'm kind of curious in terms of, because the whole process here doesn't inspire a lot of confidence in terms of what was presented, what was listed in the attachment, and then what was taken. And I understand that we're going to focus on the firearms. In fact, let's do that now. I'm just trying to figure out what is the basis, in your view, for taking firearms. It's for listing a search for all firearms beyond the 10 that were erroneously given back to him from the Phoenix property room. Sure. And this, your honor, goes into why this case is far different than the Nora case that the district court found controlling. So, here we have a case that doesn't involve just one firearm, but a multiplicity of firearms. We know there's probable cause for the 10. The defense concedes that in their answering brief. But in addition to that, we know he was tied to a prior firearm from the handgun that was seized previously. We also know that he held himself. But that prior firearm, and I'm sorry, Mr. Kozen, to interrupt you, but that prior firearm, you also knew, or should have known, was in the property room still. It was not. So, yeah. Right. But what it does is it presents an indicia of what this defendant was doing. So, he was engaging in extraordinary efforts to rearm himself, notwithstanding the success of domestic violence orders of protection. So, we know he was a repeat violator of the firearms bar. We know he described himself. We know that Nora had been a three-time prohibited possessor before the officers saw him. And this is, I'm just trying to reconcile because, to me, it seems like we he was a three-time prohibited possessor. And in that case, still, the decision was, from the Ninth Circuit, was that could only search for what they had probable cause to believe was in the house. And so, in his apartment, I believe. And so, I'm trying to figure out how is this different from Nora? Because right now, it sounds like you're arguing that because he had a prior access or had in possession another weapon, which you had reason to know, or the government had reason to know, was not in his house. How do we square that with Nora? So, the prior possession just shows that he was a repeat violator. Now, when you add that fact to the fact that he disobeyed, he just took such affirmative steps to rearm, despite being told by a state court commissioner that he couldn't have these weapons. He took erroneously issued paperwork, convinced a clerk to give him back the 10 firearms, and did so after acknowledging in open court that he understood the firearms bar. That's in the affidavit at paragraph 14. After he had been served in open court with the restraining order and with a notice of Brady indicator, that's in paragraph 13 of the affidavit as well. He took this extraordinary step of driving across town, presumably, to the police department to get these weapons back. And then, all while he had twice been found to be an ongoing continuing danger to the safety of his ex-spouse. So, added on top of that is... I'm sorry. Can I ask you to back up for a minute? Because I think we're all pretty well aware of what's in the affidavit and what the facts are. But to me, I need to start with what were the charges and when the application and the proposed warrant were both submitted to the magistrate judge, along with the attachments. When I read the application, it said that the offense under investigation was a violation of section 922 G8. In other words, they were investigating Mr. Batchelor as a prohibited possessor. They were not investigating him for some sort of crime involved in his recovery or the way that he obtained the 10 guns from the city. It was a prohibited possession case. And in Nora, the defendant was being investigated for a misdemeanor of having a weapon on the public street. And of course, Nora was significantly different because there was tainted evidence because they arrested him in his home. And so the court cut out all the other evidence and then looked at whether there was probable cause for the misdemeanor charge of having a weapon on the street based on seeing him holding one gun and didn't find that the two times that he had convictions for being a prohibited possessor was significant. Whereas here, there's the extraordinary lengths he went to through deception to get those guns back, even after being told repeatedly by the court that he couldn't have them. There's the time he's arrested for the DUI and he has a gun he's not supposed to have, even though it's not at the scene. There are statements that he has a vast collection of inherited military weapons. And so it seemed to me the agent was putting together probable cause for a prohibited possession case, in which case any gun found in his home was contraband. And so to me, this whole incorporation and all these other issues are red herrings because the issue is, what's the probable cause to seize firearms in his home? If there was, then the warrants is valid. It's not overbroad. We don't have to consider incorporation of the affidavit. We don't have to consider good faith exception. So I guess the easy thing for you to do is say, yes, you're right. It really wasn't a question as much as a speech at you. But I mean, I guess what's frustrating me is we seem to be so caught up in these side issues without looking at why was he investigated and what probable cause was the agent trying to establish. So that's exactly right, Your Honor. And that was actually the next point I was going to make in response to Judge Murguia, which is that added on top of all of these facts was that the affidavit clearly showed the crime under investigation was 922 G8, prohibited possession, which meant that any firearms, any ammunition in his possession would be contraband or evidence of a crime. Now, I understand that standing alone may not be enough, but in combination with all these other facts. By taking that in, anybody who has a 922 G8 or anyone who's a prohibited possessor, can the government just say, hey, we know that they, the fact that people who have been convicted of that before, we can go in, we know they tend to have guns, even though they're not, they're in violation. We can just open their doors and go in and look for all their guns, even though we don't really know that they have any more guns beyond what we know that we saw and that we have probable cause for. That's the problem here, I think. And if you can establish that he had, there was probable cause beyond the fact that, you know what, he's a prohibited possessor. He likes to get guns. We can go in and get any and all guns, even if we don't know they're there. When you look at this statement that Agent Gonzalez gave, you know, she said that Batchelor made the following statement in superior court hearing, and this is at affidavit, paragraph 14 on ER 52. I have a collection of military firearms. I would very much like to have back, is what it says. If you look at what he actually said at the superior court hearing, that's not what he said. He said, what he said is, I have a vast collection of inherited military firearms that have been taken away from me for a year, and I would very much like to have those back. And it was a year from that day that the 10 firearms from the Property Management Bureau were taken away from Batchelor when he made that statement. So I'm just trying to figure out, and you know, the question is, could the, I guess the magistrate judge have just looked at that statement and said, oh, that's enough, but I have a little trouble that Agent Gonzalez misquoted and possibly mischaracterized that statement, and that relied on that for the magistrate judge, because right now, that to me is your best evidence that he might have had firearms beyond the 10 that he knew he had taken erroneously. And you need to have, I think my understanding of the law is, you need to have probable cause for the items that you're looking for. And so the 10, you can't just say, once you get there and you're looking for the 10 and you find other ones, of course you can get them. Those are kind of common basic principles of search and seizure, but I'll stop and let you respond. So I think the best way of responding is to look to the cases that say you take a common sense, practical approach to looking at the search warrant, not a hyper-technical approach. And we look to whether a reasonable inference can be drawn from this unique and compelling constellation of facts that any number of guns are likely to be found in this person's possession. This is not a case where we just knew that he was a prohibited possessor, so we decided to search his house for any weapons he might have. There is far more here than a case like that. And that's what really distinguishes this case, is that you had this individual who stood in Arizona State Court and was told directly by a judge, a commissioner, you are not to have firearms. And then he goes and he gets firearms. That kind of behavior combined with the fact that he had been twice been determined to be a danger to his ex-wife and his prior possession, taken as a whole, makes it reasonable to infer that there are more guns there. Plus the notion that any guns in his possession would have been contraband. And even if that... So it's our position that that is enough and that distinguishes this from Nora, but... Counsel. Yeah, sorry, go ahead. Okay, so I'm trying to figure out, I'm very anxious to understand exactly what the government wants us to do. As I understand it, of the guns you seized, all but one were on the list in the Gonzalez affidavit. That is correct. And if you have those guns, that is sufficient to go forward with the prosecution? I think it would be, your honor. Yes. Okay. And so you don't need the Colt 45 and you don't need anything else that wasn't found in his home? Correct. Okay. If I look at attachment B, attachment B, once I measured against the Gonzalez affidavit, attachment B is just clearly overbroad, sort of ridiculously overbroad in some respects. In addition, you have occupancy, U.S. currency, sales receipts. They're looking for stuff from Ikea, vehicle registration records and so on. Now, number one, number two are interesting, the firearms and ammunition, firearm cases and boxes, but particularly the firearms and ammunition in light of the Gonzalez affidavit. So if I were trying to read those two things together, I can say, well, we're looking for the guns he got from the police department and perhaps anything else. You don't have anything else except for the Colt 45. And if the district court had said, I'm going to let the guns in that were in the Gonzalez affidavit, I'm suppressing the Colt 45 and everything else you found, you could go forward with this. Isn't that all you're asking this court to do is to sever on attachment B, number one, two through 12 and you can abandon the Colt 45 and just say, all we really are interested in is the fact that he possesses the guns he got back from the police department. Right. So that is a remedy that would be perfectly appropriate here. We asked for reversal of the entire suppression order because we think that all nine guns and all of the scope of the probable cause set forth in the affidavit. But if, but if the court alternatively wants to look at this remedy that your honor just sketched out, I think that would be acceptable as well. I think more, I'm sorry, I wanted to mention good faith, but go on your honor. Before you get to good faith, but is the defendant arguing and you helped me here because I appreciate what judge Bivey just offered up here. Is that what the defendant arguing is that hey, because the warrant was overbroad, it was not a valid warrant. So nothing comes in. What's, what allows us to sever it at this point? And if that is the case, is there a case law that we get to sever it at this point? The SDI case talks about severing parts of warrants that are not valid, but there's another point. How is the government going to establish that the weapons, the firearms traveled in interstate commerce? So it may be that ATF can find serial numbers on firearms and check certain records. There may be serial numbers that have been obliterated. There may not be records of whether firearms crossed state lines because it may have happened surreptitiously. So could the government be seeking ledgers and large amounts of cash and records to show transactions involving the firearms? It does seem on its face that it might not be valid, but there are things they have to prove besides just the fact that he had a firearm. They have to establish interstate commerce. That is all correct, your honor. And I just want to point out though, that that was never, you know, even really litigated. The motion to suppress was targeted at the firearms. The court's order is targeted at the firearms. The court only ordered suppression of the firearms and that's what we're seeking. But you didn't put on any evidence at all. When you said the whole subject of discussion was the firearms, but you didn't put the agent on to talk about a lot of what you're arguing now. Why was that? Well, I think, your honor, that actually what we're arguing now is based on the record that was before the court, the affidavit and the party's briefs, which really argued matters of the good faith exception applies. So going into the oral argument on the motion to suppress, the court confirmed with everybody at the outset, I understand this isn't going to be a hearing involving taking evidence that we're going to with argument. And that is essentially what happened. So it wasn't really until much later on in the argument itself that the discussion evolved in such a way that defense counsel said, hey, government, you should put on a testimony and then mentioned a case that hadn't previously been brought up in any of the briefs. So I think that's, I think that's what happened there. But I don't think that is really relevant. I don't think we even have to address those issues because the record before the court, the affidavit itself is really the key part of the record that is all that we really need to consider here. But how do you get to the affidavit? I mean, are you talking about good faith now? Well, okay, now I will move on to good faith. No, you don't have time now to talk about, but I just wanted to know, is that what you were talking about was good faith? No, I think that applies to the whole argument. Okay. All right. Thank you. I'll give you a few minutes. Sorry, we've kind of gone over time here. Thank you. Thank you. Good afternoon, your honors. May it please the court. My name is Keith Hilsendecker. I'm from the federal public defender's office here in Phoenix, and I represent the defendant, John to measure the validity of the warrant in terms, meaning whether the warrant is overbroad, is to compare the probable cause demonstration in the affidavit against the authorization of things that the warrant authorized these agents to seize. And the affidavit tells a very simple story. This guy was subject to overprotection. Mr. Hilsendecker. I'm sorry. I know I just garbled that horribly. Hilsendecker. So I've been thinking about this because it's fascinating to me, but suppose the offense was possession with intent to distribute some kind of controlled substance. That's what the person was being investigated for doing. And the affidavit from the agent said, we set up one or two controlled buys. We purchased some heroin from him or fentanyl, cocaine, whatever it is. And on another instance, we had a wiretap and we heard him talking about maybe some drug transactions, but they don't list any specific drugs. And then they seek a search warrant for his home. And they say, we want to search and see any controlled substances, narcotics, opioids, whatever. And they go in and they find things that are not the same kind of drug that were used in the controlled buys. Suppose the controlled buy was heroin and they find fentanyl in his home. Is that overbroad? Can they not search for narcotics and controlled substance and opioids when they're investigating possessions with intent to distribute because they have specific information about a couple of drugs. They can't look, find the rest. Um, that's very similar. A lot of information about the specific guns, which leads them to believe he's a prohibited possessor who may have, uh, uh, an arsenal in his home. Your honor, may I ask you a question about your hypothetical where the target crime is drug distribution? I mean, that would maybe depend, maybe depend on whether the affidavit or the warrant itself authorizes a search for any controlled substance. Number one. Number two, that was in my hypothetical is they have, they have evidence of a couple of controlled buys, or maybe even just one controlled by, and they have, maybe they have some, um, wiretap conversation and they asked for a warrant to look for ledgers, cash scales, packing materials, uh, and any controlled substances. Are you saying that that warrant would be too broad? No, because it would be fairly, it would be fair to infer that when you're trying to investigate drug trafficking and you want to go after someone who is selling a large quantity of drugs, that, that those items would be associated with drug trafficking. The difference here, your honor, is that the affidavit in this case described a very simple thing. He was told he couldn't have these guns. He went to the police department and got them back. And for some reason they gave them to him. So we need to get the guns that he was erroneously given back from him. That that's all this affidavit says. It, it doesn't say that people who are under an order of protection who have eight guns or 10 guns tend to be collectors, tend to be involved in the sale and purchase of guns. It doesn't describe, it doesn't, this particular affidavit about what Mr. Batchelor was alleged to have done. And I'm sorry, Mr. Heldenser, do you have the affidavit in front of you? I have it on my screen, but I'm looking at my iPad, so I can't see it. And the final paragraph, does the agent say, we think this is sufficient for what? What does she say for, to establish probable cause of a violation of 922 G8? I'm sorry, go ahead. I was going to say, yes, she describes the reason why the order of protection that Mr. Batchelor got qualifies under those three subsections of G8. But the 21st paragraph in the affidavit, I think is sort of key. This is where I would expect to see some language about, in my experience, people who multiple guns tend to want to get others and there's constantly trading them back and forth or something like you might see in a child pornography investigation. But here's what this 21st paragraph says, based on my training and experience, I know that it is common for persons who are involved in the unlawful possession of firearms and or ammunition to store their items in their residences or in their vehicle or to conceal them on their person. I know that it is common for persons who are involved in the illegal possession, distribution and sale of firearms to engage in such activity from their residence and vehicles, attempting to conceal their dealings from detection by law enforcement. I also know based on the above investigation that Batchelor previously has stored his residence and his vehicle. All of that is aimed at saying, look, when you go and look for these eight firearms or 10, I'm sorry, you might find them in his apartment and you might find them in his car. It doesn't also say she's talking about what she knows from her experience with respect to the possession of firearms, the illegal prohibited investment firearm. And I think at the conclusion of the affidavit, she says, you know, I asked the court for to issue a warrant because we think there's probable cause to show he's a prohibited possessor who has firearms, not I asked for a warrant so that we can seize these guns that he illegally, that he wrongfully, you know, obtained from the police department. And then when you look at the application, which nobody's really talked about, and I'm sorry, I take it for different perspectives because I was a magistrate judge for seven years and I reviewed hundreds and hundreds and hundreds of applications and proposed search warrants. The application is very important and that's where it says what the offense is, the suspected offense. And I know because I looked at this application that it says 922 G8 and that the agent signs and says, you know, if there's probable cause to support, you know, our investigation of this defendant for this offense. And then the magistrate judge signed it and said, um, based on the affidavits, what testimony, et cetera, et cetera, you know, I find this probable cause. Um, I'm sorry, go ahead. The application does say that he's suspected of being a prohibited possessor of firearm who has firearms. It does not say that he's suspected of illegally trafficking in firearms matters because what they're establishing is probable cause that he's violated 922, meaning he's a prohibited possessor, but nonetheless he possesses. They're not targeting him with another statute that says he was selling, um, or, or doing transactions. Um, my point about the records was that there's evidence in those records that can establish where a gun came from and the government has to prove that. So that, you know, is a reason for them to ask for those things. Um, doesn't usually, in my experience, the government doesn't usually attempt to prove that certain firearms traveled at interstate commerce at a felony possession trial or whatever, by getting the evidence of interstate commerce from the defendant himself. Well, it depends. It depends on what evidence they have available. Sometimes they can tell from serial numbers. Sometimes they have records from gun shows. I mean, sometimes there are other ways to do it. Um, but it's not all that uncommon for people to obliterate serial numbers on firearms. Um, and then they look for other addition of how it was, may have been transported through interstate commerce. So I know, I'm sorry, I didn't mean to throw you off track. I think we might. No, that's fine. I, I, um, I just wanted to look quickly again at the affidavit to see if there was any discussion of whether the firearms that he was suspected to have had actually traveled in interstate commerce. Yes, it is. It is mentioned. It's mentioned in paragraph 22. At least eight of the 10 firearms had been shipped from one state to another. Okay. So that just sort of bolsters my point, uh, Judge Beatty, because this affidavit recites that we already know that some of these firearms traveled interstate commerce. They don't, they don't seem to expect to find that evidence in Mr. Batchelor's apartment. They're just looking for the guns. Well, I think what they're doing, I'm not sure you can make that conclusion. What they're doing is trying to establish probable cause so that they can get a valid warrant. And they need probable cause to search for firearms and ammunition in his possession because he's a prohibited possession and they want to charge him under 922 G, which they've clearly stated on the application and which the agent has stated in the affidavit. And so the probable cause they're trying to establish is not probable cause to prove he committed some crime by the way he obtained the firearms from the city of Phoenix. They're trying to establish probable cause that he is possessing firearms that he's not allowed to possess. And all of those firearms are contraband, just like any controlled substances would be contraband if located in the home of a person being investigated for possession with intent to distribute. But how are the ledgers contraband or evidence of a crime when this affidavit says, I already know that eight of these 10 firearms have traveled in their state. Well, I guess your question assumes that the agents think that's all they're going to find, that there might not be other firearms there. And the other point is, suppose you're right, suppose they shouldn't have asked for ledgers or evidence of transactions. Why can't that just be severed? I mean, we haven't had a trial yet, right? So when the case SDI talks about severability, it says you can't have a hugely inappropriate warrant. They just have a little tiny part that's okay. And then sever and say that's okay. But that's not what happened here. The focus of this warrant is on the firearms and there are other things mentioned too. So it wouldn't be as if you were just taking a whole of the warrant and severing it. You'd be taking the critical core of the warrant and keeping it and severing the other things if you don't think, if the court didn't think that there was a valid reason. And the other problem that both of you have counsel is that none of this was discussed or litigated in district court. So there's no record on that because it wasn't in the motion from what I can tell. And it wasn't in the argument that either counsel made about the other materials. Mr. Good seemed to be focused entirely on the firearms. And I'm not saying that's unreasonable, but it does result in the record that we have now. Your Honor, if I may, on page 15 of the excerpt of the record, Mr. Good argued that the fact that the warrant included authorized seizure of ledgers, records, receipts, vehicle registration records, financial records, currency, indicia of occupancy, that bolstered the over breadth of the warrant. So what I understood him to be arguing, and perhaps I misunderstood, was that that went really to whether it was in good faith. That he thought that made the warrant so broad that no reasonable officer could have relied upon it. Although they may regularly receive warrants that have them search for ownership. Because one of the issues is, this isn't my house. I don't live here. Those guns aren't mine or the drugs aren't mine. I mean, those are going to be common things in a search warrant. But nonetheless, Mr. Good wasn't saying all of these things were wrongfully seized and we want them suppressed. The whole suppression was about the firearms. Is that correct? But the fact that if you look at the application for the search warrant, it says, we suspect that he's violating 922 G8. And then you look at the list of things that they authorize to seize and 10 categories of those things are not even firearms. Well, I mean, they do have to prove his possession, right? So the fact that it's his residence is valid, indicia of occupancy. Records that if they found it in his car, they were authorized to search in his car, they found a gun in the car, they're going to have to show it's his car. Well, they learned that it was his car and his apartment by looking at the records, if I remember correctly. Right. But they, I mean, they need to, they need to present a case. They have the burden of proof of beyond reasonable doubt. Right. So they need to, they need to search for evidence of a potential crime or contraband. They need to show that there's reasonable likelihood that that's what they find. That's probable cause. Right. I thought we were just talking about probable cause for this warrant. Right. But you're talking about how all these other categories, how that somehow none of that is, uh, was relevant and it made the warrant overbroad. Um, and I'm saying that wasn't explored in the district court. It, the, the judge Reyes said in his order that it's no reasonable officer could possibly think that based on the application it's and the warrant itself, I'm sorry, based on the warrant itself, which is a one piece of paper and two attachments that any reasonable officer would think, oh, gee, we suspect him of violating 922 G8. Let's go take some money out of his apartment. It should have been obvious. I don't think, I mean, I've read judge Reyes' order. I'm sure you've read it more times than I have. So you, I'm sure you're correct, but I didn't read him to be saying that I read him to be focusing on this incorporation argument and then turning to faith. Um, which I think, uh, with all due respect to the district court, um, that kind of misses the point because the first question was, was there probable cause to seize firearms? And then you don't even get to those other issues and you know, whether officer who got a warrant that said seize all controlled substances, search and seize all firearms would think, but it would not believe that that was valid. Um, you know, I don't know that I think judge unless you need to respond to judge baby here. Um, I didn't think she was asking a question, but well, I mean, what, what, where is it? And just give me a citation to where it is in particular judge Reyes' order that you think he's, he was saying it couldn't be based on other categories in the warrant. I, he may have focused on that, but I didn't think he did. I thought he focused almost exclusively on the firearms. Well, that's, that's how I read the record. The it's the good faith exception to the exclusionary rule is inapplicable here because the overbreadth was so pronounced that no reasonable officer could have relied on it. That's straight out of Leon. Sure. But does that say anything about, um, why, I mean, does it talk about, does he go on to talk about ledgers, um, cash, uh, any of that sort of thing to particularly describe the items to be searched and seized, even though the information was available to known by the agent. It just, okay. So it sounds like what judge race did was assume that there wasn't probable cause to search for firearms in general, and that they only had probable cause as the defense conceded to search for the 10 weapons. And so they should have listed the 10 weapons in the, in the, um, in the warrant. Is that, is that a fair assessment of his order in your view? That's yes. That is why the incorporation question is salient in my mind. Okay. Thank you. I just had a question because the government's opening brief argues at all cause requires just a fair probability of finding contraband or evidence in a particular place. And that straight judges probable cause of termination is given significant deference. So I guess what's your best, uh, you know, authority to overcome this very flexible standard of probable cause and the significant deference afforded to a magistrate judge here, because, um, to me, that's going to be a significant point. The best authority that I have are Nora and Weber where, you know, taking those two cases together, they stand for the Although Nora, the court there acknowledged they weren't going to, you know, give the magistrate the normal deference because there were some problems, you know, with tainted evidence. But once the court in Nora sort of redlined out the parts of the affidavit that were tainted, it was left with an observation that we saw this guy standing in his front yard with one gun and we obtained a warrant that that authorized the search for any guns. You know, Weber's the same way. We know that this guy has four contraband photographs and we have authorized a search for any and all contraband photographs. Counsel, I'd like to follow up on that with the same questions I asked, um, I asked, uh, uh, Mr. Kozinets, um, since there are no other guns here other than the Colt 45, why shouldn't the district court have simply suppressed all of the evidence except for the weapons that were identified in paragraph 15 of the affidavit? You have no objection to that. They had probable cause, they had probable cause to do that. They were identified with particularity, uh, in the affidavit. Now you can make the argument that the affidavit can't be incorporated. That was part of the, that was part of Judge Ray's, um, and let's suppose that I, let's suppose that I don't, uh, I, you can suppose for purposes of my question that I don't, uh, think that that's a valid argument, uh, that they have been identified with particularity and that, and that Agent Gonzalez was on the search and she knew exactly what they were looking for. Why, why wouldn't we, why, why wouldn't at a minimum, couldn't we say, well, at least those are good. Everything else may go, but those weapons are good. Well, because your honor, there was no evidence before the district court that Agent Gonzalez was actually there when the, well, she signed, she signed the return and that's in the, that's in the public record. We can look at that. We know what the answer is. I, I, I guess my, my only answer to that, your honor, is that that's not the remedy that Nora imposed. It is, it is the, it is the remedy that Weber imposed. Weber suppresses paragraph two of the, of the warrant. And it allows the evidence that was in paragraph one, which was the, which was the controlled, uh, the controlled mail, um, the four items of pornography that he had previously got to be admitted. So it, uh, in Weber, we clearly did excise some stuff and allowed other stuff to proceed that why isn't, why isn't Weber exactly on point for that? That is, we may have to, we may have to excise some things that were seized, but at least as to those guns, there's no, there's no reason to suppress that. Your honor, I guess my only answer to that is, you know, that, that wasn't, that wasn't what the government said should be done to the district court. I mean, frankly, it's not what we asked for either. Um, but I do acknowledge that Weber says what, what you've said it says. Um, and so I don't, I don't have a better answer for that. I'm sorry. Okay. I mean, there's a, it's a very, very short order from judge, from judge Ray's, and it's fairly conclusory. Um, it's, it's a little, it's a little frustrating and I have to I mean, I think, I think there were, I think there were some mistakes made here, um, on a lot of, on a lot of fronts, but why isn't, why isn't the right thing to do here to admit the guns that everybody knew that he had were identified with particularity and set out in an affidavit by an agent who, who took the warrant that she sought and went in and found the guns. Your honor, based on the fact that we conceded before the district court and I have conceded before this that, uh, there was always probable cause to seize the, whatever firearms that were returned to Mr. Batchelor by the, by the Feehens police department. And the, you know, acknowledging that Weber says what it says, um, that seems to be an appropriate disposition for this appeal. Um, and so if, if the court has any questions. Thank you. I will, I will. Unless you, Judge Bivey, do you have anything else? No, thank you. And thank you, Mr. Helsinger for your patience because I know we took you both considerably over time. That's fine. Judge Bivey, do you have anything else? No, I don't. I think, I want to thank both counsel. Okay. Mr. Helsinger, I'll give you a chance to make one concluding statement. Um, I, I'm, I'm fine. Okay. Thank you. Okay. Thank you. Um, Mr. Kozinets. Yes, your honor. Okay. I'll give you a minute. Thank you, your honor. Um, just a couple of quick things. I think your honor was exactly right. The Supreme court has held that even in borderline or marginal cases, kind of the tie goes to the magistrate judge, if you will. And the district court here failed to grapple with deference at all and failed to grapple with the common sense, practical standards that apply to, uh, determining probable cause. In light of the practical aspects of this, I'm going to put the same question that I put to Mr. Hilzendegger, which at the conclusion of our conversation, he said it would seem to be no. Why isn't that from the government's perspective, the right, the right answer here as well? That is a perfectly acceptable answer, um, from the government's perspective. I think the court could go further though, and overturn, uh, the order, uh, in its entirety, uh, because of all the reasons we discussed and also on grounds of good faith. Let me follow that up then. What else did your agent sees that you want to get into this case? Okay. So there was one additional handgun. It was a loaded Smith and Wesson handgun that was found during the search. Yeah. It's not the Colt 45. That was from a prior seizure. It's a Smith and Wesson loaded handgun. Uh, we don't know how he got it, uh, or when he got it, but it was there. And I think it would have been discovered even if the agents were just searching for the eight or the 10 listed arms. Given that you've got everything else, that's just kind of piling on, isn't it? Uh, perhaps your honor. Is there anything else? Is there anything else that was seized that the government needs? Uh, well, just for perhaps for other case related purposes, there was all the ammunition that was seized. None of which he was, uh, legally allowed to have. All right. Uh, any, any, any written documents? Vehicle registration, cash, uh, all the rest of the stuff that was found in all those other places that just was not identified with any particularity. Well, your honor that those, whatever else was seized that falls into those categories just wasn't the object of suppression. So I don't think there's any need to suppress them now. If the district court didn't deem well to suppress them initially. Okay. The district court suppressed everything. I'm trying to figure, I'm trying to figure out what, what are we just going to send this back in the district court's going to say, okay, well, now that we're beyond number one on appendix B, uh, now we have to talk about numbers, you know, seven through nine. Um, the only thing the district time, I'm sorry, your honor. The only thing the district court suppressed, um, my understanding based on, on his order, where the firearms and ammunition that were seized. And that's, if you look at the first paragraph of his order, he says that, um, that's the most, the motion is to suppress the firearms and ammunition. And he says, for the reasons explained below that motion is granted. So I think that's, that's really all that we're talking about. All right. I also believe that the good time is up and you've given us a lot of time. Your time is up, but thank you very much. Appreciate it. Uh, thank you both. Um, Mr. Helsing, Dicker, um, the case of the United States versus bachelors now suspended. Um,
judges: Bybee, Murguia, Bade